**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| JEREMY KYLE PICKARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23CV54 JMB |
| | ) | |
| MIKE JONES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

Self-represented Plaintiff Jeremy Pickard brings this action for alleged violations of his civil rights. Plaintiff initiated this suit by filing a complaint and an 'Affidavit in Support of Request to Proceed *In Forma Pauperis* – Prisoner Cases' in the United States District Court for the Western District of Missouri. ECF Nos. 1- 2. The case was transferred to this Court on April 7, 2023. ECF No. 3. Because the Western District Court did not rule on Plaintiff's request to proceed *in forma pauperis*, or without prepayment of the required filing fees and costs, that motion is now before this Court. *See* ECF Nos. 2-3. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and assess an initial partial filing fee of $8.00. *See* 28 U.S.C. § 1915(b)(1). As Plaintiff is now proceeding *in forma pauperis*, the Court must review his complaint under 28 U.S.C. § 1915. Based on such review, the Court will dismiss the complaint for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

**Initial Partial Filing Fee**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff is a prisoner currently incarcerated at Algoa Correctional Center in Jefferson City, Missouri. ECF No. 1 at 2. Plaintiff did not submit a certified prison account statement in support of his motion, but he states that he makes $40 a month as a prison cook at Algoa. ECF No. 2 at 1. The Court finds that Plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $8.00, which is twenty percent of Plaintiff's average monthly deposit. If Plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district

court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework.  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).  However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct."  *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  *Id.* at 679.

## The Complaint

Although Plaintiff is currently confined at Algoa Correctional Center, the claims he asserts in this case involve injuries he sustained while confined at the Butler County Jail in Poplar Bluff, Missouri.[1]  ECF No. 1 at 2, 6.  Plaintiff brings this action under 42 U.S.C. § 1983, alleging violations of his civil rights against five defendants associated with the Butler County Sheriff's Department: (1) Mike Jones (Chief of Corrections); (2) Francisco Vega (correctional officer); (3) Shane Sloan (medical staff); (4) Mark Dobbs (Sheriff); and (5) "Circuit 2 Bailiff."  *Id.* at 2-3; ECF

---

[1] Because Butler County is located in Poplar Bluff, Missouri, which is in the Eastern District of Missouri, this case was transferred to this Court from the United States District Court for the Western District of Missouri.  *See* ECF No. 3.

No. 1-1 at 1, 3-4.  Plaintiff does not state the capacity in which he brings his claims against defendant Vega; however, the other defendants are named in both their official and individual capacities.  ECF No. 1 at 2-3.

Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights, based on a "fall down the courthouse steps."  ECF Nos. 1 at 4; 1-1 at 2.  According to Plaintiff, on March 17, 2022, the elevator was not working at the Butler County courthouse so the inmates had to walk down the stairs while in "shackles and belly chains."  ECF No. 1-1 at 5.  Plaintiff slipped on the first step down and was unable to catch himself because of the restraints.  *Id.* at 5-6.  He fell, hit his head, and lost consciousness.  *Id.* at 6.  Plaintiff states that at the time, "Circuit 2 Bailiff was escorting several inmates" including himself.  However, Plaintiff also states that they had to walk down the stairs "without a[n] escort which is proper training techniques."  *Id.* at 5.  Plaintiff blames his slip and fall on the Bailiff's failure to properly escort him.  *Id.*

After the fall, Plaintiff was taken by ambulance to the Emergency Room and examined.  *Id.* at 6.  He asserts that no scans were done of his head and he was taken back to the Butler County Jail.  On the following day, Plaintiff states that he passed out in his cell.  *Id.* at 5-6.  Defendant correctional officer Vega called medical staff member Sloan.  Sloan asked Plaintiff some questions and then directed Vega to put Plaintiff on a bed mattress and take him to the "holding cell."  Plaintiff passed out again on the next day.  Someone pushed the emergency call button in the cell where Plaintiff was located.  Plaintiff states that "staff" came in, put him on a bed mattress, and "left with no medical help by Butler County jail officers."  *Id.* at 6-7.  On the third day after the fall, Plaintiff passed out again and a cellmate pushed the emergency call button.  *Id.* at 7.  A staff member who "works for E.M.T." checked Plaintiff's vitals.  *Id.* at 6.

Plaintiff summarizes his claims as Eighth Amendment "medical" and Fourteenth Amendment "failure to protect." *Id.* at 3. Plaintiff asserts Chief Mike Jones and Sheriff Mark Dobbs "failed to oversee the people who caused the wrong by hiring unqualified people or failing to adequately train [their] staff." *Id.* at 6. Specifically, as to Sheriff Dobbs, Plaintiff alleges that his failure to train "created a policy or custom that allowed the wrong to occur." *Id.* at 4. As for correctional officer Vega, Plaintiff states that Vega violated his rights by rolling him onto a mattress, dragging that mattress into a holding cell, and leaving Plaintiff in that cell. As to medical staff member Shane Sloan, Plaintiff alleges that Sloan failed to provide "proper medical attention" when he directed Vega to take Plaintiff to a holding cell and then he never subsequently checked on Plaintiff. *Id.* at 3, 6. Finally, Plaintiff asserts that the Bailiff failed to "secure each Prisoner" as they were walking down the courthouse steps. *Id.* at 4.

As a result of the fall, Plaintiff asserts that he passed out several times and he suffered head injuries, a fracture in his hand, a left shoulder injury, and knee injuries. ECF No. 1 at 4-5. For relief, Plaintiff seeks $250,000 in actual and punitive damages. *Id.*

## Discussion

Based on a careful review and liberal construction of the filings before the Court, Plaintiff has not adequately alleged claims to withstand review under 28 U.S.C. § 1915(e)(2)(B). As discussed below, the allegations of the complaint fail to assert sufficient facts to state claims based on failure to protect or deliberately indifferent medical care, under the Eighth or Fourteenth Amendments. Plaintiff's complaint will be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

I. **Failure to Protect Claims**

    a. **Legal Standard**

Under the Fourteenth Amendment's substantive due process rights, the State has an affirmative duty to protect a person when the State has put limitations on the person's personal liberty, like in the case of a prisoner. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

To establish a conditions of confinement claim under the Eighth Amendment,[2] a prisoner must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the defendant whose act or omission caused the alleged constitutional deprivation behaved with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004).

"A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837). "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). "[P]rison

---

[2] Plaintiff describes himself as a convicted and confined state prisoner in his complaint (ECF No. 1 at 4); however, it is not clear whether Plaintiff held this status at the time of the incident or if he was a pretrial detainee. Although the Fourteenth Amendment protects pretrial detainees, it extends to them "at least the same protections that convicted prisoners receive under the Eighth Amendment." *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021).

officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (internal quotations and citation omitted).

### b. Defendant Circuit 2 Bailiff

Liberally construing the factual allegations of the complaint, Plaintiff has not demonstrated a deliberate or callous indifference to any known risk to his safety by the Circuit 2 Bailiff. When the Bailiff escorted Plaintiff and other restrained inmates down the courthouse steps because the elevator was broken, he did not knowingly disregard an excessive risk of harm to Plaintiff that resulted in a 'denial of the minimal civilized measure of life's necessities.' According to numerous federal courts, walking down steps while wearing restraints is not enough to constitute such a deprivation. *See, e.g.*, *Kirby v. Ryan*, No. CV 16-1053-PHX-ROS (MHB), 2017 WL 6883772, at *4 (D. Ariz. Oct. 31, 2017) (requiring prisoner to descend stairs alone with hands cuffed behind his back did not deprive him of the "minimal civilized measure of life's necessities"); *Denton v. Bala*, No. C 13-1374 SI (pr), 2013 WL 2931897, at *3 (N.D. Cal. June 13, 2013) (requiring prisoner to descend stairs with hands cuffed behind back did not deny him a "minimal civilized measure of life's necessities"); *Pendergrass v. Hodge*, 53 F.Supp.2d 838, 842 (E.D. Va. 1999) (requiring the plaintiff to descend stairs in shackles did not constitute a " 'sufficiently serious' deprivation of a basic human need in violation of contemporary notions of decency").

Walking on the stairs while restrained is not itself an excessive risk, and Plaintiff provides nothing more. Plaintiff does not assert that he had any medical condition or physical ailment that would make the stairs dangerous or that would make it more likely that he would slip. Nor does

he assert any specific hazard that would make the stairs a risk to him.³  Moreover, Plaintiff does not allege any past incidents of falls that would make the risk known to the Bailiff.

Plaintiff's claim, at most, amounts to negligence – either on his part, on the Bailiff's, or both.  But this is not enough to state a deliberate indifference claim.  "[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017).  Mere negligence or inadvertence does not rise to the level of deliberate indifference.  *Id*.

The complained-of condition of confinement does not state an Eighth Amendment violation.  *See Staunton v. Harrington*, No. 19-408 JAO-RT, 2020 WL 129088, at *5 (D. Hawaii Jan. 10, 2020) (citing *Gray v. Warm Springs Corr. Ctr.*, No. 2:13-CV-901-RCJ-VCF, 2013 WL 4774632, at *4 (D. Nev. Sept. 4, 2013)) "[R]equiring an inmate to descend stairs while he is wearing restraints, without more facts showing deliberate indifference, does not equate to a civil rights violation.").  Plaintiff fails to state a claim against the Circuit 2 Bailiff.

### c. Defendants Chief of Corrections Mike Jones & Sheriff Mark Dobbs

Plaintiff alleges that Chief Jones and Sheriff Dobbs failed to supervise and train their employees, including the Circuit 2 Bailiff, resulting in Plaintiff's fall.  "[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the

---

³ The Court notes that even if Plaintiff had alleged some specific hazard that made his slip and fall more likely, this still may not have been enough to state an Eighth Amendment claim.  *See Thornton v. Phillips Cnty., Ark.*, 240 F.3d 728, 729 (8th Cir. 2001) (no error in dismissing the plaintiff's claims that the defendant county violated his constitutional rights by issuing him a jail jumpsuit that was too long and caused him to trip and fall down the stairs); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("shackling a dangerous inmate in a shower" did not create "a sufficiently unsafe condition" to constitute a violation of the Eighth Amendment); *Jones v. Meddly*, No. 1:17-CV-109-SAB (PC), 2019 WL 3302358, at *7-8 (E.D. Cal. July 23, 2019) (defendant correctional officer was not deliberately indifferent to the plaintiff's safety when the plaintiff "was ascending steep metal stairs, stated his difficulty balancing while shackled, and was wearing flip-flops after showering"); *Silva v. Bd. of Cnty. Comm'rs for the Cnty. of Roosevelt*, No. 2:15-CV-1046 MCA-SMV, 2017 WL 4325769, at *5 (D. New Mexico Sept. 26, 2017) (requiring detainee to exit transport van unassisted while shackled did "not amount to a cognizable violation of the Eighth Amendment.").

constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). The standard used to determine liability for failure to train is deliberate indifference. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). To show deliberate indifference, a plaintiff must prove that the defendant had notice that the procedures were inadequate and likely to result in a violation of his constitutional rights. *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005); *see also Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018) ("A supervisor may be liable under § 1983 if he (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts").

As discussed above, the Circuit 2 Bailiff's escort of Plaintiff down the stairs while restrained, did not constitute a violation of Plaintiff's constitutional rights. Jones and Hobbs cannot be liable for failing to train the Bailiff on how to escort prisoners properly, when the method used did not violate the Constitution. Given there was no unconstitutional act, defendants Jones and Hobbs could not have received notice of a pattern of such acts. Furthermore, Plaintiff does not allege any pattern or reoccurrence of restrained prisoners falling on the steps. Because there was no unconstitutional act nor a pattern of such acts, defendants Jones and Hobbs could not have acted with deliberate indifference to such knowledge. Plaintiff's claims of failure to train or supervise against Jones and Dobbs must be dismissed.

## II. Deliberately Indifferent Medical Care Claims

### a. Legal Standard

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 685 (1978). One such federally protected right is the Eighth Amendment's

prohibition on cruel and unusual punishment, which protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on a deliberate indifference claim, a prisoner plaintiff must demonstrate that he suffered from an objectively serious medical need, and that defendants actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

"[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay*, 847 F.3d at 643. An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference. *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

Deliberate indifference may also be demonstrated by prison officials who intentionally deny or delay access to medical care. *Estelle*, 429 U.S. at 104-05. When a delay in treatment is alleged to have violated an inmate's constitutional rights, a court measures the objective severity of the deprivation "by reference to the *effect* of the delay in treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016) (internal quotation marks omitted) (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)).

### b. Defendant Medical Staffer Shane Sloan

Plaintiff alleges that defendant Shane Sloan – who Plaintiff describes as a member of the Butler County Jail medical staff – provided deliberately indifferent medical care. Plaintiff does not specify what medical care he was denied by Sloan. Plaintiff does allege that he was denied a head scan at the Emergency Room immediately after his fall, but defendant Sloan had no involvement in Plaintiff's care in the ER. Plaintiff asserts that he passed out once a day during each of the three days following the fall. However, he only states that defendant Sloan was involved in his treatment on one of these three occasions.

On the day after the fall, Plaintiff passed out in his cell and correctional officer Vega called Sloan for medical assistance. Plaintiff states that Sloan asked him some questions and then told Vega to put Plaintiff on a mattress and take him into a holding cell. Plaintiff asserts that Sloan should not have just left him in the holding cell. However, Plaintiff does not assert that he had a serious medical need that was denied treatment. Presumably, Plaintiff is arguing that his fainting spell constitutes a serious medical need. But Plaintiff does not assert that he was later diagnosed with any injury, or that now, a year later, he suffers from any lasting or known effect from the fall. Nor does Plaintiff assert that any delay in receipt of medical care exacerbated any injury. Plaintiff was evaluated in the ER after his fall. One fainting spell on the following day is not enough to state a serious medical need if nothing was diagnosed at the ER. *See also Killian v. Corizon Healthcare LLC*, No. 4:21-CV-1432 JCH, 2022 WL 705526, at *5 (E.D. Mo. Mar. 8, 2022) (fainting, falling, and having a bloody nose do not constitute a serious medical condition under a deliberate indifference claim).

Even if the Court assumes that Plaintiff did have a serious medical need, defendant Sloan did not act with deliberate indifference. He questioned Plaintiff and had him taken to a holding

cell, presumably for closer observation.  There is no indication that Sloan's medical questions were not enough to address Plaintiff's medical need, as Plaintiff does not assert that he suffered from any ongoing medical injury.  There is no evidence of intentional maltreatment or a refusal to provide essential care by Sloan.  Plaintiff fails to assert facts demonstrating that he had a serious medical need that was deliberately disregarded by defendant Shane Sloan.  Plaintiff's claim against Sloan will be dismissed.

      c.  **Defendant Correctional Officer Francisco Vega**

Although correctional officer Vega does not appear to be a part of the medical staff at the Jail, Plaintiff alleges that he was deliberately indifferent to his medical care when he followed Sloan's directives regarding putting Plaintiff on a mattress, moving him to a holding cell, and leaving him there.  However, it is well-established that, if a trained health care official does not find a serious medical need, then it is not reasonable to conclude that a lay person should have done so.  *Kopel*, 917 F.3d at 1043.  Vega had every right to rely on the medical assessment of Sloan and to follow his medical directives.  Just as the Court found that Sloan did not act with deliberate indifference, neither did Vega in following his orders.  Plaintiff fails to state a claim of deliberate indifference against correctional officer Vega.

### III.    Official Capacity Claims

Finally, Plaintiff brings suit against all defendants (except Vega) in their official capacities as well as their individual capacities.  However, a suit brought against a state official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Accordingly, an official-capacity suit generally represents a "way of pleading an action against an entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  In other words, the real

party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

Plaintiff's official-capacity claims against defendants must be treated as claims against the governmental entity which employs them – Butler County.  In *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), the Supreme Court held that a municipality or local governing body can be directly liable under § 1983.  Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018).

Here, Plaintiff alleges that his fall down the courthouse steps resulted from a failure to train on proper techniques for escorting restrained prisoners.  However, to demonstrate deliberate indifference for purposes of failure to train, a plaintiff must show a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).  As discussed above, Plaintiff alleges no facts that demonstrate such a pattern.  He does not allege any other incidents of injury to restrained prisoners nor does he assert that any other employees were untrained.

To the extent that Plaintiff argues that the failure to train "created a policy or custom that allowed the wrong to occur" – this allegation also fails to state a claim under *Monell*.  A 'policy' is a deliberate choice to follow a course of action and a 'custom' requires the existence of a widespread pattern of unconstitutional misconduct by employees.  *See Russell v. Hennepin Cnty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action … made from among various alternatives by the official or officials responsible … for establishing final policy with respect to the subject matter in question") (internal quotations omitted); *Johnson*

*v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (In order to establish a claim of liability based on "custom," the plaintiff must demonstrate, among other things, the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees.). Again, Plaintiff does not allege any pattern of unconstitutional conduct, nor does he allege a deliberate choice to follow a course of action. The facts in the complaint are insufficient to state a claim against Butler County or its employees in their official capacities.

Furthermore, because Plaintiff fails to state a claim of a constitutional violation against any individual defendant, any claim for § 1983 or *Monell* liability against Butler County also fails. *See Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 861 (8th Cir. 2018) ("[A]bsent a constitutional violation by a city employee, there can be no § 1983 or Monell liability for the City."); *see also Malone v. Hinman*, 847 F.3d 949, 955-56 (8th Cir. 2017) (finding no § 1983 or *Monell* liability on the part of the city where no constitutional violation by the police officer employee); *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007) (finding that without a constitutional violation by the individual officers, there could be no § 1983 or *Monell* municipal liability).

**Conclusion**

It's unfortunate that Plaintiff fell while walking down the Butler County Courthouse steps in March 2022. However, "prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson,* 902 F.3d at 851. Walking down steps while in prison restraints is not enough to establish a "denial of the minimal civilized measure of life's necessities." Furthermore, the facts alleged do support the claim that any defendant acted with deliberate indifference – neither in regard to a failure to protect Plaintiff from falling nor in regard to the medical care he received after the fall. For all of these reasons,

Plaintiff's complaint fails to state a valid claim upon which relief may be granted and it will be dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* [ECF No. 2] is **GRANTED.**  *See* 28 U.S.C. § 1915(a)(1).

**IT IS FURTHER ORDERED** that the Plaintiff shall pay an initial filing fee of $8.00 within **thirty (30) days** of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint as to any defendant because the complaint fails to state a claim upon which relief can be granted.  Plaintiff's claims against all defendants are **DISMISSED without prejudice**.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 20th day of June, 2023.

                                              HENRY EDWARD AUTREY
                                              UNITED STATES DISTRICT JUDGE